# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued May 7, 2024                    Decided August 2, 2024

No. 23-5152

CAROL A. LEWIS AND DOUGLAS B. SARGENT, ON BEHALF OF
THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,
APPELLANTS

v.

XAVIER BECERRA, IN HIS CAPACITY AS SECRETARY OF THE
UNITED STATES DEPARTMENT OF HEALTH AND HUMAN
SERVICES,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cv-02929)

———

*James Pistorino* argued the cause for appellants. With him
on the briefs were *David B. Goroff*, *Michael D. Leffel*, and
*Andrew C. Gresik*.

*Joshua M. Koppel*, Attorney, U.S. Department of Justice,
argued the cause for appellee. With him on the brief were
*Brian M. Boynton*, Principal Deputy Assistant Attorney
General, *Abby C. Wright*, Attorney, *Samuel R. Bagenstos*,
General Counsel, U.S. Department of Health and Human
Services*, and *David Hoskins*, Attorney.

2

Before: KATSAS, RAO, and WALKER, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KATSAS.

KATSAS, *Circuit Judge*:  Carol Lewis and Douglas Sargent sued the Secretary of Health and Human Services to obtain reimbursement for the cost of certain medical equipment.  They won.  But they nevertheless appeal, seeking to challenge the district court's earlier denial of class certification.  By itself, their desire to serve as class representatives does not create a cognizable Article III interest.  And Lewis and Sargent do not allege that the denial of class certification has caused them any other, concrete individual injury.  We therefore dismiss their appeal for lack of constitutional standing.

I

A

The Medicare program provides health insurance for the elderly and disabled.  *See* 42 U.S.C. § 1395 *et seq*.  Part B of Medicare covers "durable medical equipment."  42 U.S.C. § 1395m(a).

Congress has provided for limited judicial review of Medicare eligibility determinations.  The Medicare Act incorporates the judicial-review provisions of the Social Security Act, which require a beneficiary to exhaust administrative remedies and then to seek review within sixty days of the final agency determination.  *See* 42 U.S.C. §§ 1395ii, 1395ff(b)(1)(A) (Medicare); *id.* § 405(g) (Social Security); *Am. Hosp. Ass'n v. Azar*, 895 F.3d 822, 825–26 (D.C. Cir. 2018).  In some circumstances, courts may excuse a beneficiary's failure to exhaust, *Bowen v. City of New York*, 476 U.S. 467, 482 (1986), and may equitably toll the sixty-day deadline for seeking judicial review, *id.* at 481.

3

## B

Diabetes is a chronic condition where the body fails to produce or properly respond to insulin, which regulates blood-sugar levels. A blood-sugar level too high or low can cause serious health problems. So, diabetics must monitor their blood-sugar levels.

Continuous glucose monitors provide one means of doing so. A sensor placed under the skin measures glucose levels and transmits the measurements to an external receiver. The Centers for Medicare & Medicaid Services, which administers Medicare for HHS, has taken different positions on whether these monitors are covered "durable medical equipment." In 2017, CMS issued guidance concluding that Part B does not generally cover these monitors. J.A. 693–95. But in 2021, CMS promulgated a rule extending Part B coverage to continuous glucose monitors with a dedicated receiver. 86 Fed. Reg. 73,860 (Dec. 28, 2021). In 2022, CMS rescinded the 2017 guidance and instructed administrative adjudicators to apply the rule to all outstanding reimbursement claims. J.A. 587.

## C

Lewis and Sargent are diabetics and Medicare beneficiaries. They sought reimbursement for their continuous glucose monitors and related supplies from 2015 to 2017. After HHS denied reimbursement, Lewis and Sargent timely pursued judicial review of the denials. They also moved to represent a class of "[a]ll persons who submitted claims for coverage of [continuous glucose monitor] equipment or supplies whose claims were denied (and not later reversed on appeal) since December 13, 2012"—regardless of whether these individuals had exhausted administrative remedies or timely sought judicial review. J.A. 48.

4

The district court denied Lewis and Sargent's motion for class certification. The court noted that the claims of most putative class members were unexhausted, untimely, or both. J.A. 538–39. It then concluded that neither waiver of the exhaustion requirement nor equitable tolling of the limitations period would be appropriate. *Id.* at 539–45. The court therefore excluded individuals with unexhausted or untimely claims, which reduced the putative class to seventeen individuals. *Id.* at 549. Then, the court held that this group was too small to meet the numerosity requirement for class certification. *Id.* at 550.

After CMS issued its 2022 guidance, HHS moved for partial judgment in Lewis and Sargent's favor. Over their objection, the district court granted the motion, set aside the denials of Lewis and Sargent's claims, declared that continuous glucose monitors and their related supplies are durable medical equipment, and dismissed Lewis and Sargent's other claims as moot. J.A. 625–26. Lewis and Sargent then appealed.

II

On appeal, Lewis and Sargent do not challenge any aspect of their favorable merits judgment. Instead, they challenge only the denial of their motion for class certification.

The government does not question our jurisdiction. But "federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction" and "must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). In particular, federal courts of appeals lack jurisdiction if the appellant has not shown standing to pursue the appeal. *See, e.g.*, *West Virginia v. EPA*, 597 U.S. 697, 718 (2022); *Hollingsworth v. Perry*, 570

5

U.S. 693, 715 (2013). Considering the issue on our own, we hold that Lewis and Sargent lack appellate standing.

A

Article III limits the judicial power of the United States to resolving "Cases" or "Controversies." U.S. Const. Art. III, § 2. "Article III denies federal courts the power to decide questions that cannot affect the rights of litigants in the case before them, and confines them to resolving real and substantial controversies admitting of specific relief through a decree of a conclusive character." *Lewis v. Cont'l Bank Corp*., 494 U.S. 472, 477 (1990) (cleaned up). To this end, any party invoking a federal court's jurisdiction must prove its "standing." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). In a federal district court, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Similarly, in a federal appellate court, an appellant must show a concrete and particularized injury "fairly traceable to the *judgment below*" and likely to be redressed by a favorable ruling on appeal. *West Virginia*, 597 U.S. at 718.

In *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326 (1980), the Supreme Court considered when prevailing plaintiffs may appeal a denial of class certification. The Court first acknowledged that federal appellate courts normally lack jurisdiction to entertain appeals from litigants who obtained favorable judgments: "A party who receives all that he has sought generally is not aggrieved by the judgment affording the relief and cannot appeal from it." *Id.* at 333. But the Court also explained that, in some circumstances, the victorious party "retains a stake in the appeal satisfying the requirements of

6

Art[icle] III." *Id.* at 334.  In those cases, it may appeal an
"adverse ruling collateral to the judgment on the merits." *Id.*;
*see also id.* at 336 ("Federal appellate jurisdiction is limited by
the appellant's personal stake in the appeal.").  In short, the
Court held that prevailing plaintiffs may appeal a denial of
class certification if, but only if, they satisfy the ordinary
requirements for Article III standing.[1]

In *Roper*, the prevailing plaintiffs alleged that the denial of
class certification caused them a pocketbook harm—an
"obvious" Article III injury, *see TransUnion*, 594 U.S. at 425.
They argued that a successful appeal would allow them to shift
part of their litigation costs "to those who [would] share in its
benefits if the class is certified and ultimately prevails." *Roper*,
445 U.S. at 336.  In other words, the named plaintiffs alleged
that the denial of class certification forced them to bear all of
the "fees and expenses" incurred during the litigation, whereas

---

[1]  *Roper* framed its Article III analysis in terms of mootness,
asking whether the named plaintiffs' success on their individual
claims mooted any ongoing controversy over the denial of class
certification.  *See* 445 U.S. at 331.  Later, the Supreme Court began
to describe the requisite personal stake of a prevailing party in terms
of standing to appeal.  For example, in *Arizonans for Official English
v. Arizona*, 520 U.S. 43 (1997), the Court held that the "standing"
requirement of Article III "must be met by persons seeking appellate
review, just as it must be met by persons appearing in courts of first
instance." *Id.* at 64; *accord West Virginia*, 597 U.S. at 718;
*Hollingsworth*, 570 U.S. at 715.  We think standing is the more
precise analytical framework, because any appellant must invoke and
establish the jurisdiction of an appellate court at the outset of any
appeal, regardless of whether the plaintiff had properly invoked the
jurisdiction of the trial court below.  *See, e.g.*, *Process & Indus. Devs.
Ltd. v. Fed. Republic of Nigeria*, 962 F.3d 576, 580 (D.C. Cir. 2020).
In any event, the analysis that follows does not turn on whether the
requisite stake of a prevailing plaintiff is better framed as a question
of standing or mootness.

7

absent class members would have otherwise picked up part of the tab. *See id.* at 334 n.6. Based on this pocketbook injury, the Court held that the prevailing plaintiffs had a continuing Article III stake in their appeal. *Id.* at 340.

*Roper* noted other "interests" of the prevailing plaintiffs, including their "right as litigants" to invoke class-certification rules and the duty of named plaintiffs "to represent the collective interests of the putative class." 445 U.S. at 331. *Roper* also noted the "substantial advantages" of class actions, such as facilitating the adjudication of small individual claims, and it described these "policy considerations" as "not irrelevant" to the jurisdictional question presented. *Id.* at 338–40. This language from *Roper*—combined with the reasoning of *U.S. Parole Commission v. Geraghty*, 445 U.S. 388 (1980)—has led some commentators to read *Roper* to authorize prevailing plaintiffs to appeal denials of class certification regardless of whether they have any continuing individual interest in the appeal. *See*, *e.g.*, 1 Newberg and Rubenstein on Class Actions § 2:10 (6th ed. updated June 2024). We will have more to say about *Geraghty* later. For now, we emphasize that *Roper* at the outset expressly declined to hold that the prevailing plaintiffs' interest in securing a correct application of Rule 23, or their interest in representing others similarly situated, was sufficient to support continuing Article III jurisdiction. 445 U.S. at 331–32. And in conclusion, *Roper* expressly based its holding of an ongoing controversy on the plaintiffs' alleged pocketbook injury, *i.e.*, their "*individual* interest in the litigation—as distinguished from whatever may be their representative responsibilities to the putative class." *Id.* at 340.

*Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66 (2013), confirms this understanding of *Roper*. *Genesis Healthcare* involved a Fair Labor Standards Act lawsuit filed by one

8

plaintiff on behalf of herself and others "similarly situated." *Id.*
at 69. The Court held that the case became moot when the
defendant offered judgment to the plaintiff because, with her
individual claim satisfied, "she lacked any personal interest in
representing others." *Id.* at 73. The Court explained that
*Roper*, "by [its] own terms," was "inapplicable." *Id.* at 74. It
stressed that "*Roper*'s holding"—that the plaintiffs there had
standing to appeal a denial of class certification—"turned on a
specific factual finding that the plaintiffs possessed a
continuing personal economic stake in the litigation, even after
the defendants' offer of judgment." *Id.* at 78. Likewise, the
Court attributed no significance to *Roper*'s broader "dicta"
about the salutary "objectives of class actions." *Id.* at 77–78.
And it questioned whether even *Roper*'s narrow holding
remained good law after an intervening decision held that a
plaintiff's "interest in attorney's fees is, of course, insufficient
to create an Article III case or controversy where none exists
on the merits of the underlying claim." *Id.* at 78 n.5 (quoting
*Lewis*, 494 U.S. at 480). *Genesis Healthcare* thus underscores
that *Roper* at most allows prevailing plaintiffs to appeal the
denial of class certification when they have a continuing
individual stake in the litigation.

B

In stark contrast to the prevailing plaintiffs in *Roper*,
Lewis and Sargent have alleged no continuing pocketbook or
other individual injury. At oral argument, they disavowed any
theory of standing based on the possible recovery of costs or
fees from absent class members. And they declined to press
any theory of standing based on the possible recovery of
increased fees from the government under the Equal Access to
Justice Act (EAJA), 28 U.S.C. § 2412. Instead, they allege
only one injury—losing the asserted right to represent the
interests of absent class members. Our jurisdiction thus turns

9

on whether the mere desire to serve as a class representative is a concrete Article III injury.

We hold that it is not. If HHS now reimbursed all absent class members, it would benefit Lewis and Sargent "no more directly and tangibly" than it would benefit "the public at large." *Lujan*, 504 U.S. at 574. Their continued discontent with the denial of class certification is thus a "generally available grievance about [the] government" that fails to distinguish Lewis and Sargent from any other citizen. *Id.* at 573–74. And such a generalized grievance "does not state an Article III case or controversy." *Id.* at 574. As the Supreme Court held in *Lujan* and confirmed just weeks ago: "Article III standing screens out plaintiffs who might have only a general legal, moral, ideological, or policy objection to a particular government action." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). This is not to question the earnestness or intensity of Lewis and Sargent's feelings that the government has wrongfully denied reimbursement to other diabetic Medicare beneficiaries. But "in order to claim 'the interests of others, the litigants themselves still must have suffered an injury in fact.'" *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 543 (2020) (quoting *Hollingsworth*, 570 U.S. at 708). Even "sincere" concern about the government's treatment of others cannot support Article III standing. *All. for Hippocratic Med.*, 602 U.S. at 392–93.[2]

---

[2]  Lewis and Sargent do not claim standing as next friends of other diabetic Medicare beneficiaries, which would require them to show that the other beneficiaries were "unable to litigate" on their own behalf "due to mental incapacity, lack of access to court, or other similar disability." *Whitmore v. Arkansas*, 495 U.S. 149, 165 (1990). Here, nothing prevented absent putative class members from pursuing their own claims, either in separate actions or as post-

10

Nor can standing rest on any alleged misapplication of Rule 23. For one thing, Rule 23 creates no substantive right to serve as a class representative. It was promulgated under the Rules Enabling Act, which permits the Supreme Court to "prescribe general rules of practice and procedure" that do not "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(a)–(b). So, the "right of a litigant to employ Rule 23 is a procedural right only, ancillary to the litigation of substantive claims." *Roper*, 445 U.S. at 332. Once unmoored from any real-world consequences for Lewis and Sargent, the district court's alleged misapplication of Rule 23 was a "bare procedural violation, divorced from any concrete harm" to Lewis and Sargent—which cannot support their standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016); *see also Microsoft Corp. v. Baker*, 582 U.S. 23, 45 (2017) (Thomas, J., concurring in the judgment) ("Class allegations, without an underlying individual claim, do not give rise to a 'case' or 'controversy.'"). In any event, Article III itself requires the plaintiff or appellant to have a "concrete" individual injury in fact. *See Lujan*, 504 U.S. at 560. And just as statutes enacted by Congress may not establish this constitutional requirement of concreteness, *see TransUnion*, 594 U.S. at 426, neither may rules promulgated by courts.

Without any personal stake of the kind identified in *Roper*, Lewis and Sargent have no concrete interest in continuing to seek class certification. We therefore lack jurisdiction over their appeal.

---

judgment intervenors in this one. *See United Airlines, Inc. v. McDonald*, 432 U.S. 385, 395–96 (1977).

11

C

We recognize that the Second Circuit has disagreed with our conclusion. In *Jin v. Shanghai Original, Inc.*, 990 F.3d 251 (2d Cir. 2021), that court held that a prevailing plaintiff could appeal a decision to decertify regardless of whether he had any continuing, concrete individual injury. *Id.* at 256–57. The court read *Roper* to hold that a "narrow fee-shifting interest" was "*sufficient*" to establish appellate standing, but not to hold that such an interest was "*necessary*." *Id.* at 258. Freed of *Roper*, the court then based its decision primarily on *Geraghty*. *See id.* at 258–61. In that case, the Supreme Court held that a prisoner could appeal a denial of class certification even after his release had mooted his individual claim. *Geraghty*, 445 U.S. at 390, 407. *Jin* reasoned that *Geraghty* had compared "the right to have a class certified if the requirements of Rule 23 are met" to "the interest of 'the private attorney general'" and "found that type of interest sufficient to satisfy the personal stake requirement." *Jin*, 990 F.3d at 258–59 (quoting *Geraghty*, 445 U.S. at 403–04) (cleaned up).

With due respect to the considered views of our colleagues, we are unpersuaded. *Geraghty* did not hold that the interest in serving as a "private attorney general," in order to protect the interests of others, is a traditional Article III stake. Quite the opposite: *Geraghty* acknowledged that a "legally cognizable interest … in the traditional sense rarely ever exists with respect to the class certification claim" and that the "'right'" (with scare quotes in the original) to serve as a class representative is *not* analogous "to the type of interest traditionally thought to satisfy the personal stake requirement." 445 U.S. at 402–03 (cleaned up). In other words, *Geraghty* confirms that an interest in serving as a class representative is *not* a traditional Article III interest. And lawsuits "may not proceed" when the party invoking a court's jurisdiction has no

12

"harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 427. This aspect of *Geraghty* cuts *against* appellate standing.

To be sure, the Supreme Court did hold that Geraghty could appeal the denial of class certification anyway. It reasoned that "Art[icle] III's 'uncertain and shifting contours' with respect to nontraditional forms of litigation … requires reference to the purposes of the case-or-controversy requirement." 445 U.S. at 402 (quoting *Flast v. Cohen*, 392 U.S. 83, 97 (1968)). It then determined that "the purpose of the 'personal stake' requirement is to assure that the case is in a form capable of judicial resolution," which requires "sharply presented issues in a concrete factual setting and self-interested parties vigorously advocating opposing positions." *Id.* at 403. Because Geraghty "continue[d] vigorously to advocate his right to have a class certified," the Court held that the question of class certification remained a "concrete, sharply presented issue." *Id.* at 403–04. The Court described its view as reflecting an "erosion of the strict, formalistic perception of Art[icle] III" urged in the *Flast* dissent. *Id.* at 404 n.11.

This aspect of *Geraghty*'s reasoning—reducing constitutional standing to a functionalist concern about adversary presentation—does not reflect current law. At every turn, *Geraghty* borrowed that approach from *Flast*. *See Geraghty*, 445 U.S. at 395–97, 401, 402, 404 n.11. But since *Geraghty*, the Supreme Court has emphatically rejected *Flast*'s pure functionalism. Its "later opinions have made it explicitly clear that *Flast* erred in assuming that assurance of 'serious and adversarial treatment' was the only value protected by standing." *Lewis v. Casey*, 518 U.S. 343, 353 n.3 (1996) (cleaned up). "*Flast* failed to recognize that this doctrine has a separation-of-powers component, which keeps courts within certain traditional bounds vis-à-vis the other branches, concrete

13

adverseness or not." *Id.* This was no minor oversight, for the "separation of powers" is the "single basic idea" on which all of Article III standing is built, and it often requires a "restricted role for Article III courts." *United States v. Texas*, 599 U.S. 670, 675, 681 (2023) (quoting *Allen v. Wright*, 468 U.S. 737, 752 (1984), and *Raines v. Byrd*, 521 U.S. 811, 828 (1997)). Properly understood as protecting the separation of powers, Article III standing demands an "actual injury," because only "someone who has been *actually injured*" can appropriately "call in the courts to examine the propriety of executive action" (or, in this case, the judicial action of a lower court). *Lewis*, 518 U.S. at 353 n.3. To that end, the Article III analysis of *Flast* and *Geraghty* has been replaced by a more exacting requirement that the party invoking a court's jurisdiction have suffered an injury "traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 423, 427. Repudiating *Flast*, the Supreme Court now views this injury requirement, together with the related elements of traceability and redressability, as having always been "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan*, 504 U.S. at 560. Applying these principles for some four decades, the Court now routinely denies Article III standing to parties who have suffered no concrete, particularized, and actual or imminent injury in fact—no matter how strongly they feel, how vigorously they advocate, or how well they develop the facts. *See, e.g.*, *All. for Hippocratic Med.*, 602 U.S. at 386 (pro-life advocates); *United States v. Texas*, 599 U.S. at 681 (States); *TransUnion*, 594 U.S. at 417 (6,332 individuals); *Raines*, 521 U.S. at 830 (Members of Congress); *Lujan*, 504 U.S. at 559, 578 (environmental organizations); *Allen v. Wright*, 468 U.S. at 739–40 (parents).

To be sure, we remain bound by *Geraghty*'s specific holding that a plaintiff whose individual claims became moot can appeal a prior denial of class certification. *See Rodriguez*

14

*de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989); *Geraghty*, 445 U.S. at 390, 401–02. But *Roper*—not *Geraghty*—is the directly controlling precedent for assessing whether plaintiffs who have prevailed on the merits may appeal a denial of class certification. And as between the two decisions, *Roper* is far more consistent with the Supreme Court's current standing jurisprudence, despite the case's arguable ambiguity. Ultimately, we must decide whether to read *Roper* broadly (in light of *Geraghty*'s capacious reasoning, rooted in *Flast*) or narrowly (in light of subsequent Article III precedents, including *Genesis Healthcare*). With over four decades of evidence that *Geraghty* is the outlier, we find that choice straightforward.

*Jin* also invoked a supposed "assumption" in pre-*Roper* decisions that a proposed class representative may appeal the denial of class certification after final judgment. 990 F.3d at 261. Neither of the two relevant cases held that a prevailing plaintiff may appeal even absent any continuing personal stake in the litigation. *Coopers & Lybrand v. Livesay*, 437 U.S. 463 (1978), held only that a denial of class certification is not immediately appealable before final judgment. *Id.* at 468–77. In part, the Court reasoned that such a denial may be effectively reviewed after final judgment, "at the behest of the named plaintiff or intervening class members." *Id.* at 469. By definition, intervening putative class members—who do not benefit when named plaintiffs prevail on their individual claims following decertification—have a continuing stake in the litigation. So do named plaintiffs who lose on the merits or who, like the prevailing plaintiffs in *Roper*, allege some continuing interest in cost or fee shifting. Thus, effective review after final judgment does not require relaxed standing requirements for prevailing plaintiffs with no continuing individual interest in the case. Likewise, *United Airlines, Inc. v. McDonald*, 432 U.S. 385 (1977), held only that if a named

15

plaintiff prevails on the merits, an absent putative class member may intervene post-judgment in order to appeal the denial of class certification. *See id.* at 387. The Court in *McDonald* did report a concession that the prevailing plaintiffs in that case could have appealed. *See id.* at 393–94. But that issue was neither litigated nor essential to the Court's holding, and a "drive-by jurisdictional ruling[]" is entitled to "no precedential effect." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998). Moreover, the Court had no occasion even to consider whether the prevailing plaintiffs in that case—who did not try to appeal—could have alleged a fee-shifting stake akin to the one recognized in *Roper*. In sum, neither *Livesay* nor *McDonald* advances the case for standing here.

For their part, Lewis and Sargent offer only policy arguments. At oral argument, they predicted dire consequences from a dismissal of this appeal—including that lawyers will have insufficient financial incentives to represent plaintiffs with relatively small claims. In *Livesay*, the plaintiffs made a similar argument that interlocutory appeals were necessary to protect the "vital public interest" of class actions, yet the Supreme Court declined to relax the jurisdictional requirement of a final district-court decision. 437 U.S. at 469–70; *see* 28 U.S.C. § 1291. So too here. We decline to relax the jurisdictional requirements of Article III standing based on policy arguments that post-judgment appeals are similarly necessary. For one thing, it is "hardly this Court's place to pick and choose among competing policy arguments like these along the way to selecting whatever outcome seems to us most congenial, efficient, or fair." *Pereida v. Wilkinson*, 592 U.S. 224, 241 (2021). And the possibility that "no one would have standing" is "not a reason to find standing." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 420 (2013) (cleaned up).

16

In any event, we doubt that our decision will have any meaningful effect on the financial incentives of the class-action-plaintiffs' bar. For one thing, the problem Lewis and Sargent envision will not arise in cases where the district court grants class certification or rules against the named plaintiffs on the merits. And even in cases where the district court denies class certification and then rules for the named plaintiffs, several possible avenues for appeal remain. In cases involving damages, prevailing plaintiffs will likely retain a personal interest in spreading costs to absent putative class members, which *Roper* described as a "central concept of Rule 23." 445 U.S. at 338 n.9. In cases like this one, involving review of agency action denying financial benefits allegedly without substantial justification, prevailing plaintiffs may retain a personal interest in appealing the denial of class certification in order to increase their expected fee award under EAJA, at least if the additional attorney's fees would reduce the plaintiffs' own financial obligations. Indeed, before declining to pursue in this Court an EAJA-based interest as the basis for appellate standing, Lewis and Sargent themselves successfully moved the district court to stay their pending fee motion on the ground that "the standards for evaluating an award of attorney's fees will be different" depending on whether this Court were to affirm or reverse the denial of class certification. *Lewis v. Azar*, No. 18-cv-2929, ECF No. 132, at 2 (D.D.C. July 10, 2023). In cases where neither of those options appears likely, the named plaintiffs' possible difficulty in pursuing a final-judgment appeal may strengthen their case for discretionary interlocutory review under Federal Rule of Civil Procedure 23(f). And if all else fails, putative class counsel may seek to represent absent class members to intervene post-judgment in order to pursue the appeal. *See McDonald*, 432 U.S. at 393–94. For all of these reasons, we think it unlikely that our decision, applying the normal standards of Article III standing, will frustrate the normal operation of Rule 23.

17

III

Lewis and Sargent have standing to pursue this appeal only if they show concrete, individual injuries from the district court's denial of class certification. Yet they allege only an abstract interest in serving as class representatives, which is insufficient to satisfy Article III. We therefore must dismiss their appeal for lack of jurisdiction.[3]

*So ordered.*

---

[3] Lewis and Sargent ask us to reassign their case to a different district judge. Because we lack jurisdiction over this appeal, we may not consider that request.