ORAL ARGUMENT HELD MAY 7, 2024

Case No. 23-5152

==========================================================

# UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

―――――――――――――

CAROL LEWIS, *ET AL.*,

*Plaintiffs-Appellants*,

v.

XAVIER BECERRA, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE UNITED
STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,

*Defendant-Appellee.*

―――――――――――――

On Appeal from the United States District Court for the District of Columbia
The Honorable Reggie B. Walton
Case No. 18-cv-2929-RBW

―――――――――――――

### PLAINTIFFS-APPELLANTS' PETITION FOR REHEARING AND
### REHEARING EN BANC

―――――――――――――

JAMES C. PISTORINO
PARRISH LAW OFFICE
788 Washington Rd.
Pittsburgh, PA 15228
(412) 561-6250
james@dparrishlaw.com

DAVID B. GOROFF
ANDREW C. GRESIK
FOLEY & LARDNER, LLP
321 N. Clark St., Ste. 3000
Chicago, IL 60654
(312)-832-4500
dgoroff@foley.com
agresik@foley.com

*Counsel for Plaintiffs-Appellants*

October 16, 2024

## TABLE OF CONTENTS

I.    PROCEDURAL BACKGROUND ...................................................2

II.   DISCUSSION ..........................................................................3

   A.   Class Actions, Appeals, and Discretionary
        Review Under Rule 23(f) ..................................................3

   B.   Plaintiffs Have Standing to Appeal the Improper
        Denial of Class Certification ............................................5

   C.   The Decision Is Erroneous And Conflicts
        With This Court's Precedent ...........................................11

   D.   The Decision Creates a Split With At Least Five Other Circuits..........13

   E.   The Decision Misreads *Geraghty*....................................13

   F.   By Making It Easy to Gut Contingency Recoveries By Buying Off
        Named Plaintiffs Against Their Will, The Decision Deals A
        Devastating Blow to Class Actions........................................16

   III.  CONCLUSION ....................................................................17

## TABLE OF AUTHORITIES

Page(s)

Cases

*Amchem Products Inc. v. Windsor*,
  521 U.S. 591 (2017) ....................................................................................4
*Cameron-Grant v. Maxim Healthcare Services, Inc.*,
  347 F.3d 1240 (11th Cir. 2003) .................................................................10
*Campbell-Ewald Co. v. Gomez*,
  577 U.S. 153 (2016) ....................................................................................1
*Chen v. Allstate*,
  819 F.3d 1136 (9th Cir. 2016) ....................................................................1
*Coopers & Lybrand v. Livesay*,
  437 U.S. 463 (1978)....................................................................................4
*Culver v. City of Milwaukee*,
  277 F.3d 908 (7th Cir. 2002) ......................................................................9
*Deposit Guaranty Nat. Bank, Jackson, Miss. v. Roper*,
  445 U.S. 326 (1980)........................................................................... passim
*Dunn v. Blumenstein*,
  405 U.S. 330 (1972)....................................................................................6
*Flast v. Cohen*,
  392 U.S. 83 (1968).....................................................................................14
*Fulton Dental, LLC v. Bisco, Inc.*,
  860 F.3d 541 (7th Cir. 2017) ......................................................................1
*Genesis Healthcare Corp. v. Symczyk*,
  569 U.S. 66 (2013)................................................................................ 9, 10
*Gerstein v. Pugh*,
  420 U.S. 103 (1975)...................................................................................15
*In Re: Lorazepam & Clorazepate Antitrust Litigation*,
  289 F.3d 98 (D.C. Cir. 2002) ......................................................................5
*Jin v. Shanghai Original, Inc.*,
  990 F.3d 251 (2nd Cir. 2021)...................................................................2, 9
*Lusardi v. Xerox Corp.*,
  975 F.2d 964 (3rd Cir. 1992) ......................................................................9
*Microsoft v. Baker*,
  582 U.S. 23 (2017)...................................................................................3, 5
*Nutraceutical Corp. v. Lambert*,
  586 U.S. 188 (2019)..................................................................................4, 5

*Powell v. McCormack,*
  395 U.S. 486 (1969)................................................................6
*Reed v. Heckler,*
  756 F.2d 779 (10th Cir. 1985) ..............................................9
*Richards v. Delta Airlines,*
  453 F.3d 525 (D.C. Cir. 2006) ...................................... 1, 9, 12
*Sosna v. Iowa,*
  419 U.S. 393 (1975).......................................... 1, 6, 7, 8
*U.S. Parole Commission,*
  579 F.2d 238 (3rd Cir. 1978) ........................................ 8, 10
*U.S. Parole Comm'n v. Geraghty,*
  445 U.S. 388 (1980)................................................ passim
*United Air Regulatory Group v. E.P.A.,*
  885 F.3d 714 (D.C. Cir. 2018)...........................................13
*United Airlines, Inc. v. McDonald,*
  422 U.S.  (1977)...........................................................7
*Wilson v. Gordon,*
  822 F.3d 934 (6th Cir. 2016) ............................................1

Other Authorities

1 *Newberg and Rubenstein on Class Actions* § 2:10 (6th ed. Updated June 2024) 10

Under the standards of Fed.R.App.P. 35 and 40, this exceptionally important case warrants rehearing/rehearing *en banc* for multiple reasons. *First*, the Decision conflicts with decisions of the U.S. Supreme Court (including at least *Sosna v. Iowa*, 419 U.S. 393 (1975) and *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980)), and this Court's precedent in *Richards v. Delta Airlines*, 453 F.3d 525 (D.C. Cir. 2006), which each hold that, after a judgment on the merits in their favor, named plaintiffs in a class action retain a personal stake in the litigation and standing to appeal class certification denials. The Decision's holding that a judgment on the merits for the named plaintiffs in a class action deprives them of standing to appeal the denial of a class certification motion conflicts with this precedent. Indeed, while the Decision attempts to draw a meaningful distinction between cases where a named plaintiff's claims became moot (as in *Geraghty*) and those where a named plaintiff prevails on the merits, outside of the class action context both situations would result in a plaintiff no longer having an Article III case or controversy. But, in the context of a class action, and based on the reasoning of the Supreme Court in *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 165–66 (2016), other courts of appeals have held that a defendant cannot defeat a class action by offering (or even tendering) a full judgment to the named plaintiff. *See Fulton Dental, LLC v. Bisco, Inc.*, 860 F.3d 541, 547 (7th Cir. 2017); *Chen v. Allstate*, 819 F.3d 1136, 1148 (9th Cir. 2016); *Wilson v. Gordon*, 822 F.3d 934, 951 (6th Cir. 2016). In other words, if a full tender of everything the

named plaintiff could be entitled to is, in the special context of a class action, not enough to cause a lack of standing to pursue certification of the class, as  these cases hold, it cannot be true that a named plaintiff prevailing on the merits on his/her individual claims lacks standing to pursue an appeal of the denial of the earlier certification decision.  There is no constitutionally recognized distinction between these situations.

*Second*, as the Panel acknowledges, the Decision creates a split with the Second Circuit on whether named plaintiffs have standing to appeal the denial of class certification after a judgment on the merits in their favor.  Decision at 11 (*citing Jin v. Shanghai Original, Inc.*, 990 F.3d 251 (2nd Cir. 2021)).  It also creates a split with at least the Third, Seventh, Tenth, and Eleventh Circuits, which have each rejected the Decision's reasoning as barred by Supreme Court precedent.

## I.    PROCEDURAL BACKGROUND

This case is the exemplar of a class action.  Through July 2019, the proposed class includes ~90,000 persons, who each has a cause of action based on the same theory – the Secretary of Health and Human Services improperly denied their claims for Medicare coverage of a device used to treat diabetes (a continuous glucose monitor (CGM)) on the grounds that a CGM is not "durable medical equipment."  Each claim is for an amount that would be uneconomic to litigate individually (~$4,000).  The claims of the proposed named class representatives (Lewis and Sargent) for CGM

coverage were denied on the same basis, have no conflicting interests, and have steadfastly remained committed to undertaking their duties to absent class members.

At class certification, Plaintiffs alleged that the district court erred when it decided the merits of unasserted affirmative defenses against absent class members without appointing them advocates or counsel (*i.e.*, class counsel), or giving them notice. Because these parties were not fairly before the Court, the district court's decision is an advisory opinion.

After the improper denial of class certification, Plaintiffs did not seek interlocutory appeal, consistent with the Supreme Court's instructions in *Microsoft v. Baker*, that "effective review" of erroneous class certification denials is available after a ruling on the merits (*Microsoft v. Baker*, 582 U.S. 23, 34 (2017)) ("an order denying class certification is subject to effective review after final judgment at the behest of the named plaintiff")), as well as this Court's reluctance to consider interlocutory review in a standard case.

After judgment was entered for them (over their objections), Plaintiffs appealed. The Decision concludes that, contrary to *Geraghty*, Plaintiffs lost standing to appeal the denial of class certification once that judgment was entered.

## II.     DISCUSSION

### A.     Class Actions, Appeals, and Discretionary Review Under Rule 23(f)

3

Class actions play an essential role in American justice. The Supreme Court has recognized:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem Products Inc. v. Windsor*, 521 U.S. 591, 617 (2017) (cleaned-up). Because of the small claims at issue, the Supreme Court has recognized that contingency fees are a "central concept of Rule 23." *Deposit Guaranty Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 338, n.9 (1980).

Of course, an order certifying or not certifying a class is interlocutory and typically not immediately appealable. Absent exceptional circumstances, a party seeking appellate review of a class certification decision must await final judgment to pursue an appeal. *See Nutraceutical Corp. v. Lambert*, 586 U.S. 188, 196 (2019). Before 1978, some appellate courts allowed interlocutory appeal of orders denying class certification under 28 U.S.C. § 1291 as allegedly "final" under the "death knell" doctrine. In *Coopers & Lybrand v. Livesay*, 437 U.S. 463 (1978), the Supreme Court rejected this, stating that "an order denying class certification is subject to effective appellate review after final judgment at the behest of the named plaintiff or intervening class members." *Id.* at 469, 470, n.15.

Thus, before 1998, the only the avenues for interlocutory appeal of a class certification order were provided by 28 U.S.C. § 1292(b) or mandamus. *Baker*, 582 U.S. at 30. Both require a showing of "exceptional" or "ordinary" circumstances.

In 1998, the Supreme Court promulgated FED.R.CIV.P. 23(f), which reflects a "careful calibration" between the disfavor of piecemeal appeals (in favor of review of class certification decisions after a judgment on the merits) while providing greater protection against improvident class certification decisions than § 1292(b) alone. *Id.* Rule 23(f) grants appellate courts unfettered discretion to accept or deny interlocutory appeals of class certification decisions. *Id.* Thus, prior to the ruling on the merits of the named plaintiffs' claims, there appears little dispute that the named plaintiffs could have pursued an interlocutory appeal of the class certification decision. However, this and other Circuits disfavor Rule 23(f) petitions for interlocutory review. *See In Re: Lorazepam & Clorazepate Antitrust Litigation*, 289 F.3d 98, 105-6 (D.C. Cir. 2002), and typically appeals of such denials follow judgment on the merits. See Nutraceutical, 586 U.S. at 196 ("a reminder that interlocutory appeal is an exception to the general rule that appellate review must await final judgment").

### B. Plaintiffs Have Standing to Appeal the Improper Denial of Class Certification

The Supreme Court has repeatedly permitted named plaintiffs to appeal or continue to represent absent class members after resolution of the named plaintiff's claim. That is particularly true when the resolution of the named plaintiff's claim was

involuntary. *Roper*, 445 U.S. at 337-8 ("The appealability of the class certification question *after* final judgment on the merits was an important ingredient of our ruling in *Livesay*.") (emphasis original); *Geraghty*, 445 at 399-400 (same).

Mootness arises under two circumstances: when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. *Powell v. McCormack*, 395 U.S. 486, 496 (1969).

One purpose of continued standing is the "capable of repetition but evading review" grounds of cases like *Dunn v. Blumenstein*, 405 U.S. 330 (1972). There, though the named plaintiff's claim of an unconstitutional residency requirement to vote expired, the named plaintiff had standing to continue to represent the class of people to whom the requirement still applied.

Likewise, in *Sosna*, the Supreme Court held that a named plaintiff whose individual case became moot retained standing to represent the class on appeal. Justice Rehnquist wrote for the majority: "The controversy may exist, however, between a named defendant and a member of the class represented by the named plaintiff, even though the claim of the named plaintiff has become moot." 419 U.S. at 402-3.[1] Thus, the named plaintiff retained standing even though his own claim was moot. The Supreme Court held that the appropriate inquiry is whether the named

---

[1] In addition to the basic premise, the Supreme Court held that standing also existed under the traditional equitable principle of "relation-back."

plaintiff would "fairly and adequately protect the interests of the class" in light of the expiration of their claim.  *Id.* at 403.  Noting that the interests of the class had been competently urged throughout the proceeding, the Supreme Court found this test met.

In *United Airlines, Inc. v. McDonald*, 422 U.S. 385 (1977), class certification was denied and judgment ultimately entered for the named plaintiffs.  The named plaintiffs declined to appeal the class certification decision and potential absent class members sought to intervene. The Supreme Court held: "The District Court's refusal to certify was subject to appellate review after final judgment at the behest of the named plaintiffs." *Id.* at 393.

In *Geraghty* and *Roper*, the Supreme Court clarified standing issues regarding appeals of class certification denials by named representatives whose individual claims were resolved.  *Geraghty* held:

> In order to achieve the primary benefits of class suits, the Federal Rules of Civil Procedure give the proposed class representative the right to have a class certified if the requirements of the Rules are met.  This "right" is more analogous to the private attorney general concept than to the type of interest traditionally thought to satisfy the "personal stake" requirement.
>
> * * *
>
> We therefore hold that an action brought on behalf of a class does not become moot upon expiration of the named plaintiff's substantive claim, even though class certification has been denied.   The proposed

7

representative retains a "personal stake" in obtaining class certification sufficient to assure that Art. III values are not undermined.[2]

445 U.S. at 403-4.  Thus, in *Geraghty*, a named plaintiff whose claim had expired and who lacked any economic interest in continued litigation had standing to appeal denial of class certification.

In *Roper*, class certification was denied, as was interlocutory review of that denial.  Over their objection, judgment on the merits was entered for the named plaintiffs, who then appealed denial of class certification.  As here, defendant argued that the case was moot.  The Third Circuit rejected that and reversed denial of class certification.  *Roper v. U.S. Parole Commission*, 579 F.2d 238, 248-52 (3rd Cir. 1978). The Supreme Court affirmed, holding that, at the least, the named plaintiffs' interests in spreading the costs of attorneys' fees gave them an ongoing interest in the litigation. 445 U.S. at 340.

In doing so, the Court noted the defense's efforts to "buy off" named plaintiffs, holding that not allowing appeals in such circumstances would be contrary to "sound judicial administration," lead to "successive suits" and "frustrate the objectives of class litigation." *Id.* at 336.  However, the Supreme Court did not need to reach these

---

[2] *Id.* at 404-5, n. 11 ("We merely hold that when a District Court erroneously denies a procedural motion, which, if correctly decided would have prevented the action from becoming moot, an appeal lies from the denial and the correlated ruling 'relates bac' to the date of the original denial.").

other bases for standing because the economic injury of attorneys' fees, alone, supported standing.

Finally, in *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66 (2013), at issue was alleged violations of the Fair Labor Standards Act (FLSA) – which is not subject to Rule 23 but has class-action "like" aspects. The Court distinguished FLSA claims and, doing so, summarized its holdings in *Sosna* and *Geraghty*—stating:

> Rule 23 actions are fundamentally different from class actions under the FLSA.

> \* \* \*

> [Summarizing *Geraghty*] the Court held that where an action would have acquired the independent legal status described in *Sosna* but for the district court's erroneous denial of class certification, a corrected ruling on appeal "relates back" to the time of the erroneous denial of the certification motion.

> *Geraghty* is inapposite, because the Court explicitly limited its holding to cases in which the named plaintiff's claim remains live at the time the district court denied class certification.

*Id.* at 74-5 (cleaned-up).

Other Circuits and this Court have followed the Supreme Court's directives in *Sosna*, *Geraghty*, and *Roper*. *See Richards*, 453 F.3d 525 (D.C. Cir. 2006); *Jin v. Shanghai Original, Inc.*, 990 F.3d 251, 257-61 (2nd Cir. 2021); *Lusardi v. Xerox Corp.*, 975 F.2d 964, 981 (3rd Cir. 1992); *Culver v. City of Milwaukee*, 277 F.3d 908, 909-10 (7th Cir. 2002); *Reed v. Heckler*, 756 F.2d 779, 785-7 (10th Cir. 1985);

*Cameron-Grant v. Maxim Healthcare Services, Inc.*, 347 F.3d 1240, 1244-7 (11th Cir. 2003).

Finally, the leading class action treatise—1 *Newberg and Rubenstein on Class Actions* § 2:10 (6th ed. Updated June 2024)—interprets the Supreme Court's decisions to hold that named plaintiffs in a class action have standing to appeal improper denials of class certification, even after a judgments in their favor.

This wealth of precedent shows that Lewis/Sargent have standing to appeal the improper denial class certification. Their claims indisputably were "live" when the district court denied class certification. Under *Sosna* and *Geraghty*, they have standing. A corrected class certification ruling by this Court "relates back" to the time of the district court's erroneous class certification denial. *Genesis*, 569 U.S. at 74-75.

Likewise, it is indisputable that neither Lewis nor Sargent settled, voluntarily dismissed, or agreed their claims were moot. Instead, judgment was entered for them over their objection that they still wanted to represent the class and have it certified. After that judgment, they have vigorously continued to litigate the matter. Thus, they additionally have standing under the "private attorney general" approach recognized in *Geraghty* and *Roper*. *Geraghty*, 445 U.S. at 403; *Roper*, 445 U.S. at 338-40.

Moreover, Lewis and Sargent have an interest in obtaining representation to litigate their "relatively paltry" claims. They can do so by spreading the cost of

10

litigation through contingency representation—a "central concept" of the class action form. *Id.* at 338, n.9.  If the improper denial of class certification in meritorious cases is unappealable (except on a discretionary, interlocutory basis), few attorneys would take on such a representation.  If attorneys cannot be paid (except based on the "relatively paltry" recovery of the named plaintiffs) when they bring meritorious cases (but the district court erroneously denies class certification), they will not take on such cases, and people like Lewis/Sargent will be unable to obtain representation.  Thus, Lewis/Sargent have an economic interest in maintaining their ability to contract for representation.  That interest exists at the time of contracting and continues after they have obtained the benefit of that bargain.

### C.     The Decision Is Erroneous And Conflicts With This Court's Precedent

The Decision is founded on arguments advanced solely by the dissents in *Sosna* and *Geraghty*, and thus inconsistent with those cases.  In dissent in *Sosna*, only Justice White argued the mootness of the named representative's individual claim deprived the named representative of standing to represent the class.

In *Geraghty*, the named plaintiff's personal claim expired because he was released from prison on parole while his challenge to the parole program was ongoing and the named plaintiff could "obtain absolutely no additional personal relief."  445 U.S. at 414.  While the majority found there was standing, the dissent argued that mootness was not a "flexible" doctrine, the "private attorney general" concept does

not supply jurisdiction and class certification under Rule 23 is a mere procedural right that does establish jurisdiction.  Again, the Decision adopts positions the majority rejected.

While the Decision purports to apply *Roper*, it questions the majority's finding of standing.  Instead, it embraces the dissents of Justices Powell and Stewart asserting that standing may not rest on the possible cost spreading of attorneys' fees.

The disregard of *Geraghty* and *Roper* puts the Decision in conflict with this Court's own precedent.  In *Richards*, certification of a 3,000-person class was denied. The sole named plaintiff then settled her individual claim but appealed that denial. Relying on *Roper* and *Geraghty*, this Court held:

> We know, because the Supreme Court has told us, that when a class representative's claims expire involuntarily, the class representative still retains a personal stake in obtaining class certification sufficient to appeal a denial of class certification entered before the representative's claims expired.

453 F.3d at 529-30 (cleaned-up).  This Court then held that, even where a class representative's claim voluntarily expires through settlement, that representative still has a personal stake sufficient for appellate standing.

Just as in *Richards*, when Lewis/Sargent's personal claims expired involuntarily (through entry of judgment in their favor over their objection), each still "retain[ed] a personal stake in obtaining class certification sufficient to appeal a denial of class certification entered before the representative's claims expired."  In this

Circuit, a subsequent panel is bound by a prior panel's decision. *United Air Regulatory Group v. E.P.A.*, 885 F.3d 714, 720 (D.C. Cir. 2018) ("We are, of course, bound by our prior panel decision, and it is not only the result but also those portions of the opinion necessary to that result by which we are bound.") (cleaned-up). *Richards* dictates a contrary outcome here, necessitating rehearing.

### D.     The Decision Creates a Split With At Least Five Other Circuits

The Decision conflicts with, at least, those of the Second, Third, Seventh, Tenth, and Eleventh Circuits, which track the holdings of *Sosna*, *Geraghty*, and *Roper*, which the Decision rejects. This independently requires rehearing.

### E.     The Decision Misreads *Geraghty*

The Decision misreads *Geraghty*.  The Decision concludes that:

> [Lewis/Sargent's] discontent with the denial of class certification is a "generally available grievance about the government" that fails to distinguish Lewis and Sargent from any other citizen.

Decision at 9.  *Geraghty*, however, holds that a named class representative differs from "any other citizen."  *Geraghty*, 445 U.S at 403 ("the Federal Rules of Civil Procedure give the proposed class representative the right to have the class certified if the requirements of the Rules are met.").  "Any other citizen" lacks this right. Moreover, only members of the proposed class have an interest in class certification, not "any other citizen."  Lewis/Sargent's challenge to the denial of class certification is not a "generally available grievance."  Further, "any other citizen" has not undertaken duties to absent class members, while Lewis/Sargent have.

In *Geraghty*, the Supreme Court identified class actions as a non-traditional form of litigation which requires reference to the purposes of the case-or-controversy requirement. *Geraghty*, 445 U.S. at 402. The Decision mistakenly argues this passage of *Geraghty* "cuts *against* appellate standing." Decision at 12 (emphasis original). It instead does the opposite and supports appellate standing.

Because class actions differ from traditional litigation, concepts applicable to the latter may not always apply. For example, in traditional litigation, individuals' claims can only be adjudicated if they are before the court, assert claims or defenses, find representation or represent themselves, and have notice of the case. In a class action, that all may occur without an absent class members having any notice. Likewise, as *Genesis* holds, class actions are fundamentally different from traditional litigation regarding standing in particular.

While the Panel attempts to distinguish *Geraghty* based on more recent statements by the Supreme Court about *Flast v. Cohen*, 392 U.S. 83 (1968), *Geraghty* remains governing precedent irrespective of those statements. The Panel also overlooked independent reasons for standing found in Geraghty, including the fundamental nature and goals of class actions (*e.g.*, protecting the defendant from inconsistent obligations, protecting absentee' interests, providing convenient and economical means for disposing of similar lawsuits,[3] and facilitating spreading of

---

[3] For both the parties and the courts.

litigation costs). *Id.* at 402-4.[4]    Yet another aspect was the application of the "traditional equitable doctrine" of "relation back" that the Court previously applied in *Gerstein v. Pugh*, 420 U.S. 103, 110, n.11 (1975). *Geraghty*, 445 U.S. at 404-5, n.11. As the Decision acknowledges, *Geraghty* remains good law and is binding. Thus, irrespective of how one reads *Flast* and later cases, *Geraghty* necessitates rehearing.

Importantly, *Sosna*, which the Decision overlooks, independently holds that class representatives may retain standing to appeal even where their individual underlying claim has become moot.

The Decision erroneously finds that *Geraghty's* reasoning has been "replaced." The Supreme Court's own treatment of *Geraghty* belies that. Thus, in *Genesis* in 2013, the Supreme Court reaffirmed that *Geraghty* rests upon the traditional equitable principle of "relation back."  That principle has not been "replaced."

Despite acknowledging that *Geraghty* is binding, the Decision acts as if it is not by mischaracterizing it as an "outlier," and claims erroneously that *Roper*, which aligns with *Geraghty*, is "far more consistent with the Supreme Court's current standing jurisprudence."  Decision at 13.  While a forward-looking economic interest in cost-spreading attorney's fees may be a "sufficient" basis for standing, it is not a

---

[4] As *Roper* held, it would be "contrary to sound judicial administration" to find there is no standing to appeal the denial of class certification.  *Roper*, 445 U.S. at 339-40.

"necessary" basis.  Indeed, *Sosna* and *Geraghty*[5] found standing where there was no economic interest.  *Geraghty*, 445 U.S. at 414 ("absolutely no additional personal relief").

At the end of the day, the Decision is founded on the erroneous premise that *Sosna*, *Geraghty*, and *Roper* were wrongly decided, and that this Circuit and at least five others erred in following this precedent rather than the dissents and, for the reasons discussed above, it is inconsistent with the approach adopted by the Court in *Campbell-Ewald* and its progeny.  *See, supra,* at 1-2.

Lewis and Sargent have standing.

### F.    By Making It Easy to Gut Contingency Recoveries By Buying Off Named Plaintiffs Against Their Will, The Decision Deals A Devastating Blow to Class Actions

The Decision must be revisited because it casually wreaks a sea change in class action law, without acknowledging this.  The Decision provides defendants with a blueprint to undo class actions: agree to a judgment paying off named plaintiffs' claims.  When these named plaintiffs are replaced, do the same with new plaintiffs, *ad infinitum*.

Moreover, the specter that an attorney representing named plaintiffs in a meritorious case may recover merely a percentage of named plaintiffs' paltry recovery will undo the ability to bring class action on a contingency basis, the present way in

---

[5] As well as *McDonald* and this Court's decision in *Richards*.

which most class actions are funded, because plaintiffs' attorneys will be unlikely to recover their fees.  Thus, the pool of lawyers who bring such claims would shrivel and the number of class actions would dwindle.

This Court should rehear this case to avoid these and other significant, deleterious consequences for the class action form.

## III.    CONCLUSION

For the reasons set forth above, rehearing/rehearing *en banc* should be granted, Plaintiffs found to have standing to appeal the erroneous denial of class certification, and a decision on the merits of the appeal issued.

Respectfully submitted,

Respectfully submitted,

/s/ James C. Pistorino

DAVID B. GOROFF
ANDREW C. GRESIK
FOLEY & LARDNER, LLP
321 N. Clark St., Ste. 3000
Chicago, IL 60654
(312)-832-4500
dgoroff@foley.com
Jcscott@foley.com

JAMES C. PISTORINO
PARRISH LAW OFFICE
788 Washington Rd.
Pittsburgh, PA 15228
(412) 561-6250
james@dparrishlaw.com

*Counsel for Plaintiffs-Appellants*

October 16, 2024

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32(e) because it contains 3,873 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(a)(1).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in 14-point font.

October 16, 2024

/s/ David B. Goroff
David B. Goroff

## CERTIFICATE OF SERVICE

I hereby certify that, on October 16, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

October 16, 2024

/s/ David B. Goroff
David B. Goroff

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1,

Plaintiff states that there is no applicable disclosure.

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28, Plaintiffs state:

### A.    Parties and Amici

| | |
|---|---|
| Carol A. Lewis | Plaintiff-Appellee |
| Douglas B. Sargent | Plaintiff-Appellee |
| James C. Pistorino | Counsel for Plaintiffs |
| David B. Goroff | Counsel for Plaintiffs |
| Michael D. Leffel | Counsel for Plaintiffs |
| Andrew C. Gresik | Counsel for Plaintiffs |
| Jeffrey Blumenfeld | Counsel for Plaintiffs |
| Lisa Z. Marcus | Counsel for Defendant |
| James O. Bickford | Counsel for Defendant |
| Joshua M. Koppel | Counsel for Defendant |

### B.    Rulings Under Review

3. Opinion Denying Motion for Class Certification (Dkt. 115 and Dkt. 114 Walton, J., dated April 28, 2022).

Opinion Entering Partial Judgment and Dismissing Case As Moot (Dkt. 129 and Dkt. 128 Walton, J., dated June 8, 2023).

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued May 7, 2024        Decided August 2, 2024

No. 23-5152

CAROL A. LEWIS AND DOUGLAS B. SARGENT, ON BEHALF OF
THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,
APPELLANTS

v.

XAVIER BECERRA, IN HIS CAPACITY AS SECRETARY OF THE
UNITED STATES DEPARTMENT OF HEALTH AND HUMAN
SERVICES,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cv-02929)

———

*James Pistorino* argued the cause for appellants. With him
on the briefs were *David B. Goroff*, *Michael D. Leffel*, and
*Andrew C. Gresik*.

*Joshua M. Koppel*, Attorney, U.S. Department of Justice,
argued the cause for appellee. With him on the brief were
*Brian M. Boynton*, Principal Deputy Assistant Attorney
General, *Abby C. Wright*, Attorney, *Samuel R. Bagenstos*,
General Counsel, U.S. Department of Health and Human
Services*, and *David Hoskins*, Attorney.

2

Before: KATSAS, RAO, and WALKER, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KATSAS.

KATSAS, *Circuit Judge*:  Carol Lewis and Douglas Sargent sued the Secretary of Health and Human Services to obtain reimbursement for the cost of certain medical equipment.  They won.  But they nevertheless appeal, seeking to challenge the district court's earlier denial of class certification.  By itself, their desire to serve as class representatives does not create a cognizable Article III interest.  And Lewis and Sargent do not allege that the denial of class certification has caused them any other, concrete individual injury.  We therefore dismiss their appeal for lack of constitutional standing.

I

A

The Medicare program provides health insurance for the elderly and disabled.  *See* 42 U.S.C. § 1395 *et seq*.  Part B of Medicare covers "durable medical equipment."  42 U.S.C. § 1395m(a).

Congress has provided for limited judicial review of Medicare eligibility determinations.  The Medicare Act incorporates the judicial-review provisions of the Social Security Act, which require a beneficiary to exhaust administrative remedies and then to seek review within sixty days of the final agency determination.  *See* 42 U.S.C. §§ 1395ii, 1395ff(b)(1)(A) (Medicare); *id.* § 405(g) (Social Security); *Am. Hosp. Ass'n v. Azar*, 895 F.3d 822, 825–26 (D.C. Cir. 2018).  In some circumstances, courts may excuse a beneficiary's failure to exhaust, *Bowen v. City of New York*, 476 U.S. 467, 482 (1986), and may equitably toll the sixty-day deadline for seeking judicial review, *id.* at 481.

3

B

Diabetes is a chronic condition where the body fails to produce or properly respond to insulin, which regulates blood-sugar levels. A blood-sugar level too high or low can cause serious health problems. So, diabetics must monitor their blood-sugar levels.

Continuous glucose monitors provide one means of doing so. A sensor placed under the skin measures glucose levels and transmits the measurements to an external receiver. The Centers for Medicare & Medicaid Services, which administers Medicare for HHS, has taken different positions on whether these monitors are covered "durable medical equipment." In 2017, CMS issued guidance concluding that Part B does not generally cover these monitors. J.A. 693–95. But in 2021, CMS promulgated a rule extending Part B coverage to continuous glucose monitors with a dedicated receiver. 86 Fed. Reg. 73,860 (Dec. 28, 2021). In 2022, CMS rescinded the 2017 guidance and instructed administrative adjudicators to apply the rule to all outstanding reimbursement claims. J.A. 587.

C

Lewis and Sargent are diabetics and Medicare beneficiaries. They sought reimbursement for their continuous glucose monitors and related supplies from 2015 to 2017. After HHS denied reimbursement, Lewis and Sargent timely pursued judicial review of the denials. They also moved to represent a class of "[a]ll persons who submitted claims for coverage of [continuous glucose monitor] equipment or supplies whose claims were denied (and not later reversed on appeal) since December 13, 2012"—regardless of whether these individuals had exhausted administrative remedies or timely sought judicial review. J.A. 48.

4

The district court denied Lewis and Sargent's motion for class certification. The court noted that the claims of most putative class members were unexhausted, untimely, or both. J.A. 538–39. It then concluded that neither waiver of the exhaustion requirement nor equitable tolling of the limitations period would be appropriate. *Id.* at 539–45. The court therefore excluded individuals with unexhausted or untimely claims, which reduced the putative class to seventeen individuals. *Id.* at 549. Then, the court held that this group was too small to meet the numerosity requirement for class certification. *Id.* at 550.

After CMS issued its 2022 guidance, HHS moved for partial judgment in Lewis and Sargent's favor. Over their objection, the district court granted the motion, set aside the denials of Lewis and Sargent's claims, declared that continuous glucose monitors and their related supplies are durable medical equipment, and dismissed Lewis and Sargent's other claims as moot. J.A. 625–26. Lewis and Sargent then appealed.

II

On appeal, Lewis and Sargent do not challenge any aspect of their favorable merits judgment. Instead, they challenge only the denial of their motion for class certification.

The government does not question our jurisdiction. But "federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction" and "must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). In particular, federal courts of appeals lack jurisdiction if the appellant has not shown standing to pursue the appeal. *See, e.g.*, *West Virginia v. EPA*, 597 U.S. 697, 718 (2022); *Hollingsworth v. Perry*, 570

5

U.S. 693, 715 (2013).  Considering the issue on our own, we
hold that Lewis and Sargent lack appellate standing.

## A

Article III limits the judicial power of the United States to
resolving "Cases" or "Controversies."  U.S. Const. Art. III, § 2.
"Article III denies federal courts the power to decide questions
that cannot affect the rights of litigants in the case before them,
and confines them to resolving real and substantial
controversies admitting of specific relief through a decree of a
conclusive character."  *Lewis v. Cont'l Bank Corp*., 494 U.S.
472, 477 (1990) (cleaned up).  To this end, any party invoking
a federal court's jurisdiction must prove its "standing."  *Lujan
v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  In a federal
district court, "a plaintiff must show (i) that he suffered an
injury in fact that is concrete, particularized, and actual or
imminent; (ii) that the injury was likely caused by the
defendant; and (iii) that the injury would likely be redressed by
judicial relief."  *TransUnion LLC v. Ramirez*, 594 U.S. 413,
423 (2021).  Similarly, in a federal appellate court, an appellant
must show a concrete and particularized injury "fairly traceable
to the *judgment below*" and likely to be redressed by a
favorable ruling on appeal.  *West Virginia*, 597 U.S. at 718.

In *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326
(1980), the Supreme Court considered when prevailing
plaintiffs may appeal a denial of class certification.  The Court
first acknowledged that federal appellate courts normally lack
jurisdiction to entertain appeals from litigants who obtained
favorable judgments:  "A party who receives all that he has
sought generally is not aggrieved by the judgment affording the
relief and cannot appeal from it."  *Id.* at 333.  But the Court also
explained that, in some circumstances, the victorious party
"retains a stake in the appeal satisfying the requirements of

Art[icle] III." *Id.* at 334. In those cases, it may appeal an "adverse ruling collateral to the judgment on the merits." *Id.*; *see also id.* at 336 ("Federal appellate jurisdiction is limited by the appellant's personal stake in the appeal."). In short, the Court held that prevailing plaintiffs may appeal a denial of class certification if, but only if, they satisfy the ordinary requirements for Article III standing.[1]

In *Roper*, the prevailing plaintiffs alleged that the denial of class certification caused them a pocketbook harm—an "obvious" Article III injury, *see TransUnion*, 594 U.S. at 425. They argued that a successful appeal would allow them to shift part of their litigation costs "to those who [would] share in its benefits if the class is certified and ultimately prevails." *Roper*, 445 U.S. at 336. In other words, the named plaintiffs alleged that the denial of class certification forced them to bear all of the "fees and expenses" incurred during the litigation, whereas

---

[1]  *Roper* framed its Article III analysis in terms of mootness, asking whether the named plaintiffs' success on their individual claims mooted any ongoing controversy over the denial of class certification. *See* 445 U.S. at 331. Later, the Supreme Court began to describe the requisite personal stake of a prevailing party in terms of standing to appeal. For example, in *Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997), the Court held that the "standing" requirement of Article III "must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance." *Id.* at 64; *accord West Virginia*, 597 U.S. at 718; *Hollingsworth*, 570 U.S. at 715. We think standing is the more precise analytical framework, because any appellant must invoke and establish the jurisdiction of an appellate court at the outset of any appeal, regardless of whether the plaintiff had properly invoked the jurisdiction of the trial court below. *See, e.g., Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 962 F.3d 576, 580 (D.C. Cir. 2020). In any event, the analysis that follows does not turn on whether the requisite stake of a prevailing plaintiff is better framed as a question of standing or mootness.

absent class members would have otherwise picked up part of the tab. *See id.* at 334 n.6. Based on this pocketbook injury, the Court held that the prevailing plaintiffs had a continuing Article III stake in their appeal. *Id.* at 340.

*Roper* noted other "interests" of the prevailing plaintiffs, including their "right as litigants" to invoke class-certification rules and the duty of named plaintiffs "to represent the collective interests of the putative class." 445 U.S. at 331. *Roper* also noted the "substantial advantages" of class actions, such as facilitating the adjudication of small individual claims, and it described these "policy considerations" as "not irrelevant" to the jurisdictional question presented. *Id.* at 338–40. This language from *Roper*—combined with the reasoning of *U.S. Parole Commission v. Geraghty*, 445 U.S. 388 (1980)—has led some commentators to read *Roper* to authorize prevailing plaintiffs to appeal denials of class certification regardless of whether they have any continuing individual interest in the appeal. *See*, *e.g.*, 1 Newberg and Rubenstein on Class Actions § 2:10 (6th ed. updated June 2024). We will have more to say about *Geraghty* later. For now, we emphasize that *Roper* at the outset expressly declined to hold that the prevailing plaintiffs' interest in securing a correct application of Rule 23, or their interest in representing others similarly situated, was sufficient to support continuing Article III jurisdiction. 445 U.S. at 331–32. And in conclusion, *Roper* expressly based its holding of an ongoing controversy on the plaintiffs' alleged pocketbook injury, *i.e.*, their "*individual* interest in the litigation—as distinguished from whatever may be their representative responsibilities to the putative class." *Id.* at 340.

*Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66 (2013), confirms this understanding of *Roper*. *Genesis Healthcare* involved a Fair Labor Standards Act lawsuit filed by one

8

plaintiff on behalf of herself and others "similarly situated." *Id.* at 69. The Court held that the case became moot when the defendant offered judgment to the plaintiff because, with her individual claim satisfied, "she lacked any personal interest in representing others." *Id.* at 73. The Court explained that *Roper*, "by [its] own terms," was "inapplicable." *Id.* at 74. It stressed that "*Roper*'s holding"—that the plaintiffs there had standing to appeal a denial of class certification—"turned on a specific factual finding that the plaintiffs possessed a continuing personal economic stake in the litigation, even after the defendants' offer of judgment." *Id.* at 78. Likewise, the Court attributed no significance to *Roper*'s broader "dicta" about the salutary "objectives of class actions." *Id.* at 77–78. And it questioned whether even *Roper*'s narrow holding remained good law after an intervening decision held that a plaintiff's "interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Id.* at 78 n.5 (quoting *Lewis*, 494 U.S. at 480). *Genesis Healthcare* thus underscores that *Roper* at most allows prevailing plaintiffs to appeal the denial of class certification when they have a continuing individual stake in the litigation.

B

In stark contrast to the prevailing plaintiffs in *Roper*, Lewis and Sargent have alleged no continuing pocketbook or other individual injury. At oral argument, they disavowed any theory of standing based on the possible recovery of costs or fees from absent class members. And they declined to press any theory of standing based on the possible recovery of increased fees from the government under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. Instead, they allege only one injury—losing the asserted right to represent the interests of absent class members. Our jurisdiction thus turns

9

on whether the mere desire to serve as a class representative is a concrete Article III injury.

We hold that it is not.  If HHS now reimbursed all absent class members, it would benefit Lewis and Sargent "no more directly and tangibly" than it would benefit "the public at large."  *Lujan*, 504 U.S. at 574.  Their continued discontent with the denial of class certification is thus a "generally available grievance about [the] government" that fails to distinguish Lewis and Sargent from any other citizen.  *Id.* at 573–74.  And such a generalized grievance "does not state an Article III case or controversy."  *Id.* at 574.  As the Supreme Court held in *Lujan* and confirmed just weeks ago:  "Article III standing screens out plaintiffs who might have only a general legal, moral, ideological, or policy objection to a particular government action."  *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024).  This is not to question the earnestness or intensity of Lewis and Sargent's feelings that the government has wrongfully denied reimbursement to other diabetic Medicare beneficiaries.  But "in order to claim 'the interests of others, the litigants themselves still must have suffered an injury in fact.'"  *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 543 (2020) (quoting *Hollingsworth*, 570 U.S. at 708).  Even "sincere" concern about the government's treatment of others cannot support Article III standing.  *All. for Hippocratic Med.*, 602 U.S. at 392–93.[2]

---

[2]  Lewis and Sargent do not claim standing as next friends of other diabetic Medicare beneficiaries, which would require them to show that the other beneficiaries were "unable to litigate" on their own behalf "due to mental incapacity, lack of access to court, or other similar disability."  *Whitmore v. Arkansas*, 495 U.S. 149, 165 (1990).  Here, nothing prevented absent putative class members from pursuing their own claims, either in separate actions or as post-

10

Nor can standing rest on any alleged misapplication of Rule 23.  For one thing, Rule 23 creates no substantive right to serve as a class representative.  It was promulgated under the Rules Enabling Act, which permits the Supreme Court to "prescribe general rules of practice and procedure" that do not "abridge, enlarge or modify any substantive right."  28 U.S.C. § 2072(a)–(b).  So, the "right of a litigant to employ Rule 23 is a procedural right only, ancillary to the litigation of substantive claims."  *Roper*, 445 U.S. at 332.  Once unmoored from any real-world consequences for Lewis and Sargent, the district court's alleged misapplication of Rule 23 was a "bare procedural violation, divorced from any concrete harm" to Lewis and Sargent—which cannot support their standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016); *see also Microsoft Corp. v. Baker*, 582 U.S. 23, 45 (2017) (Thomas, J., concurring in the judgment) ("Class allegations, without an underlying individual claim, do not give rise to a 'case' or 'controversy.'").  In any event, Article III itself requires the plaintiff or appellant to have a "concrete" individual injury in fact.  *See Lujan*, 504 U.S. at 560.  And just as statutes enacted by Congress may not establish this constitutional requirement of concreteness, *see TransUnion*, 594 U.S. at 426, neither may rules promulgated by courts.

Without any personal stake of the kind identified in *Roper*, Lewis and Sargent have no concrete interest in continuing to seek class certification.  We therefore lack jurisdiction over their appeal.

---

judgment intervenors in this one.  *See United Airlines, Inc. v. McDonald*, 432 U.S. 385, 395–96 (1977).

11

C

We recognize that the Second Circuit has disagreed with our conclusion. In *Jin v. Shanghai Original, Inc.*, 990 F.3d 251 (2d Cir. 2021), that court held that a prevailing plaintiff could appeal a decision to decertify regardless of whether he had any continuing, concrete individual injury. *Id.* at 256–57. The court read *Roper* to hold that a "narrow fee-shifting interest" was "*sufficient*" to establish appellate standing, but not to hold that such an interest was "*necessary*." *Id.* at 258. Freed of *Roper*, the court then based its decision primarily on *Geraghty*. *See id.* at 258–61. In that case, the Supreme Court held that a prisoner could appeal a denial of class certification even after his release had mooted his individual claim. *Geraghty*, 445 U.S. at 390, 407. *Jin* reasoned that *Geraghty* had compared "the right to have a class certified if the requirements of Rule 23 are met" to "the interest of 'the private attorney general'" and "found that type of interest sufficient to satisfy the personal stake requirement." *Jin*, 990 F.3d at 258–59 (quoting *Geraghty*, 445 U.S. at 403–04) (cleaned up).

With due respect to the considered views of our colleagues, we are unpersuaded. *Geraghty* did not hold that the interest in serving as a "private attorney general," in order to protect the interests of others, is a traditional Article III stake. Quite the opposite: *Geraghty* acknowledged that a "legally cognizable interest … in the traditional sense rarely ever exists with respect to the class certification claim" and that the "'right'" (with scare quotes in the original) to serve as a class representative is *not* analogous "to the type of interest traditionally thought to satisfy the personal stake requirement." 445 U.S. at 402–03 (cleaned up). In other words, *Geraghty* confirms that an interest in serving as a class representative is *not* a traditional Article III interest. And lawsuits "may not proceed" when the party invoking a court's jurisdiction has no

12

"harm traditionally recognized as providing a basis for a
lawsuit in American courts." *TransUnion*, 594 U.S. at 427.
This aspect of *Geraghty* cuts *against* appellate standing.

To be sure, the Supreme Court did hold that Geraghty
could appeal the denial of class certification anyway. It
reasoned that "Art[icle] III's 'uncertain and shifting contours'
with respect to nontraditional forms of litigation … requires
reference to the purposes of the case-or-controversy
requirement." 445 U.S. at 402 (quoting *Flast v. Cohen*, 392
U.S. 83, 97 (1968)). It then determined that "the purpose of the
'personal stake' requirement is to assure that the case is in a
form capable of judicial resolution," which requires "sharply
presented issues in a concrete factual setting and self-interested
parties vigorously advocating opposing positions." *Id.* at 403.
Because Geraghty "continue[d] vigorously to advocate his
right to have a class certified," the Court held that the question
of class certification remained a "concrete, sharply presented
issue." *Id.* at 403–04. The Court described its view as
reflecting an "erosion of the strict, formalistic perception of
Art[icle] III" urged in the *Flast* dissent. *Id.* at 404 n.11.

This aspect of *Geraghty*'s reasoning—reducing
constitutional standing to a functionalist concern about
adversary presentation—does not reflect current law. At every
turn, *Geraghty* borrowed that approach from *Flast*. *See
Geraghty*, 445 U.S. at 395–97, 401, 402, 404 n.11. But since
*Geraghty*, the Supreme Court has emphatically rejected *Flast*'s
pure functionalism. Its "later opinions have made it explicitly
clear that *Flast* erred in assuming that assurance of 'serious and
adversarial treatment' was the only value protected by
standing." *Lewis v. Casey*, 518 U.S. 343, 353 n.3 (1996)
(cleaned up). "*Flast* failed to recognize that this doctrine has a
separation-of-powers component, which keeps courts within
certain traditional bounds vis-à-vis the other branches, concrete

13

adverseness or not." *Id.*  This was no minor oversight, for the "separation of powers" is the "single basic idea" on which all of Article III standing is built, and it often requires a "restricted role for Article III courts."  *United States v. Texas*, 599 U.S. 670, 675, 681 (2023) (quoting *Allen v. Wright*, 468 U.S. 737, 752 (1984), and *Raines v. Byrd*, 521 U.S. 811, 828 (1997)).  Properly understood as protecting the separation of powers, Article III standing demands an "actual injury," because only "someone who has been *actually injured*" can appropriately "call in the courts to examine the propriety of executive action" (or, in this case, the judicial action of a lower court).  *Lewis*, 518 U.S. at 353 n.3.  To that end, the Article III analysis of *Flast* and *Geraghty* has been replaced by a more exacting requirement that the party invoking a court's jurisdiction have suffered an injury "traditionally recognized as providing a basis for a lawsuit in American courts."  *TransUnion*, 594 U.S. at 423, 427.  Repudiating *Flast*, the Supreme Court now views this injury requirement, together with the related elements of traceability and redressability, as having always been "an essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan*, 504 U.S. at 560.  Applying these principles for some four decades, the Court now routinely denies Article III standing to parties who have suffered no concrete, particularized, and actual or imminent injury in fact—no matter how strongly they feel, how vigorously they advocate, or how well they develop the facts.  *See, e.g.*, *All. for Hippocratic Med.*, 602 U.S. at 386 (pro-life advocates); *United States v. Texas*, 599 U.S. at 681 (States); *TransUnion*, 594 U.S. at 417 (6,332 individuals); *Raines*, 521 U.S. at 830 (Members of Congress); *Lujan*, 504 U.S. at 559, 578 (environmental organizations); *Allen v. Wright*, 468 U.S. at 739–40 (parents).

To be sure, we remain bound by *Geraghty*'s specific holding that a plaintiff whose individual claims became moot can appeal a prior denial of class certification.  *See Rodriguez*

14

*de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989); *Geraghty*, 445 U.S. at 390, 401–02. But *Roper*—not *Geraghty*—is the directly controlling precedent for assessing whether plaintiffs who have prevailed on the merits may appeal a denial of class certification. And as between the two decisions, *Roper* is far more consistent with the Supreme Court's current standing jurisprudence, despite the case's arguable ambiguity. Ultimately, we must decide whether to read *Roper* broadly (in light of *Geraghty*'s capacious reasoning, rooted in *Flast*) or narrowly (in light of subsequent Article III precedents, including *Genesis Healthcare*). With over four decades of evidence that *Geraghty* is the outlier, we find that choice straightforward.

*Jin* also invoked a supposed "assumption" in pre-*Roper* decisions that a proposed class representative may appeal the denial of class certification after final judgment. 990 F.3d at 261. Neither of the two relevant cases held that a prevailing plaintiff may appeal even absent any continuing personal stake in the litigation. *Coopers & Lybrand v. Livesay*, 437 U.S. 463 (1978), held only that a denial of class certification is not immediately appealable before final judgment. *Id.* at 468–77. In part, the Court reasoned that such a denial may be effectively reviewed after final judgment, "at the behest of the named plaintiff or intervening class members." *Id.* at 469. By definition, intervening putative class members—who do not benefit when named plaintiffs prevail on their individual claims following decertification—have a continuing stake in the litigation. So do named plaintiffs who lose on the merits or who, like the prevailing plaintiffs in *Roper*, allege some continuing interest in cost or fee shifting. Thus, effective review after final judgment does not require relaxed standing requirements for prevailing plaintiffs with no continuing individual interest in the case. Likewise, *United Airlines, Inc. v. McDonald*, 432 U.S. 385 (1977), held only that if a named

15

plaintiff prevails on the merits, an absent putative class member may intervene post-judgment in order to appeal the denial of class certification. *See id.* at 387. The Court in *McDonald* did report a concession that the prevailing plaintiffs in that case could have appealed. *See id.* at 393–94. But that issue was neither litigated nor essential to the Court's holding, and a "drive-by jurisdictional ruling[]" is entitled to "no precedential effect." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998). Moreover, the Court had no occasion even to consider whether the prevailing plaintiffs in that case—who did not try to appeal—could have alleged a fee-shifting stake akin to the one recognized in *Roper*. In sum, neither *Livesay* nor *McDonald* advances the case for standing here.

For their part, Lewis and Sargent offer only policy arguments. At oral argument, they predicted dire consequences from a dismissal of this appeal—including that lawyers will have insufficient financial incentives to represent plaintiffs with relatively small claims. In *Livesay*, the plaintiffs made a similar argument that interlocutory appeals were necessary to protect the "vital public interest" of class actions, yet the Supreme Court declined to relax the jurisdictional requirement of a final district-court decision. 437 U.S. at 469–70; *see* 28 U.S.C. § 1291. So too here. We decline to relax the jurisdictional requirements of Article III standing based on policy arguments that post-judgment appeals are similarly necessary. For one thing, it is "hardly this Court's place to pick and choose among competing policy arguments like these along the way to selecting whatever outcome seems to us most congenial, efficient, or fair." *Pereida v. Wilkinson*, 592 U.S. 224, 241 (2021). And the possibility that "no one would have standing" is "not a reason to find standing." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 420 (2013) (cleaned up).

16

In any event, we doubt that our decision will have any meaningful effect on the financial incentives of the class-action-plaintiffs' bar. For one thing, the problem Lewis and Sargent envision will not arise in cases where the district court grants class certification or rules against the named plaintiffs on the merits. And even in cases where the district court denies class certification and then rules for the named plaintiffs, several possible avenues for appeal remain. In cases involving damages, prevailing plaintiffs will likely retain a personal interest in spreading costs to absent putative class members, which *Roper* described as a "central concept of Rule 23." 445 U.S. at 338 n.9. In cases like this one, involving review of agency action denying financial benefits allegedly without substantial justification, prevailing plaintiffs may retain a personal interest in appealing the denial of class certification in order to increase their expected fee award under EAJA, at least if the additional attorney's fees would reduce the plaintiffs' own financial obligations. Indeed, before declining to pursue in this Court an EAJA-based interest as the basis for appellate standing, Lewis and Sargent themselves successfully moved the district court to stay their pending fee motion on the ground that "the standards for evaluating an award of attorney's fees will be different" depending on whether this Court were to affirm or reverse the denial of class certification. *Lewis v. Azar*, No. 18-cv-2929, ECF No. 132, at 2 (D.D.C. July 10, 2023). In cases where neither of those options appears likely, the named plaintiffs' possible difficulty in pursuing a final-judgment appeal may strengthen their case for discretionary interlocutory review under Federal Rule of Civil Procedure 23(f). And if all else fails, putative class counsel may seek to represent absent class members to intervene post-judgment in order to pursue the appeal. *See McDonald*, 432 U.S. at 393–94. For all of these reasons, we think it unlikely that our decision, applying the normal standards of Article III standing, will frustrate the normal operation of Rule 23.

17

III

Lewis and Sargent have standing to pursue this appeal only if they show concrete, individual injuries from the district court's denial of class certification. Yet they allege only an abstract interest in serving as class representatives, which is insufficient to satisfy Article III. We therefore must dismiss their appeal for lack of jurisdiction.[3]

*So ordered.*

---

[3] Lewis and Sargent ask us to reassign their case to a different district judge. Because we lack jurisdiction over this appeal, we may not consider that request.